# EXHIBIT A

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Neal J. Deckant (SBN 322946), Bursor & Fisher, P.A.<br>1990 N. California Blvd., Suite 940, Walnut Creek CA 94596<br><br>TELEPHONE NO.: (925) 300-4455   FAX NO. (Optional): (925) 407-2700<br>E-MAIL ADDRESS: ndeckant@bursor.com<br>ATTORNEY FOR (Name): Plaintiff C.B. | **FOR COURT USE ONLY**<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**02/22/2023** at 05:41:45 PM<br><br>Clerk of the Superior Court<br>By Katie Winburn, Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME:

CASE NAME:
C.B. v. Martian Sales, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [x] **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2023-00007558-CU-FR-CTL |
| | | | JUDGE: Judge Joel R. Wohlfeil<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| [ ] Auto (22)<br>[ ] Uninsured motorist (46) | [ ] Breach of contract/warranty (06)<br>[ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03)<br>[ ] Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | [ ] Other collections (09)<br>[ ] Insurance coverage (18) | [ ] Mass tort (40)<br>[ ] Securities litigation (28) |
| [ ] Asbestos (04)<br>[ ] Product liability (24) | [ ] Other contract (37)<br>**Real Property** | [ ] Environmental/Toxic tort (30)<br>[ ] Insurance coverage claims arising from the |
| [ ] Medical malpractice (45)<br>[ ] Other PI/PD/WD (23) | [ ] Eminent domain/Inverse<br>condemnation (14) | above listed provisionally complex case<br>types (41) |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | **Enforcement of Judgment** |
| [ ] Business tort/unfair business practice (07)<br>[ ] Civil rights (08) | [ ] Other real property (26)<br>**Unlawful Detainer** | [ ] Enforcement of judgment (20)<br>**Miscellaneous Civil Complaint** |
| [ ] Defamation (13)<br>[x] Fraud (16) | [ ] Commercial (31)<br>[ ] Residential (32) | [ ] RICO (27)<br>[ ] Other complaint (not specified above) (42) |
| [ ] Intellectual property (19)<br>[ ] Professional negligence (25) | [ ] Drugs (38)<br>**Judicial Review** | **Miscellaneous Civil Petition**<br>[ ] Partnership and corporate governance (21) |
| [ ] Other non-PI/PD/WD tort (35)<br>**Employment** | [ ] Asset forfeiture (05)<br>[ ] Petition re: arbitration award (11) | [ ] Other petition (not specified above) (43) |
| [ ] Wrongful termination (36)<br>[ ] Other employment (15) | [ ] Writ of mandate (02)<br>[ ] Other judicial review (39) | |

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action (specify): Seven
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: February 22, 2023

Neal J. Deckant
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev.September 1, 2021]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courts.ca.gov

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

    **Print this form**    **Save this form**      **Clear this form**

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Luke W. Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
          lsironski@bursor.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**02/22/2023** at 05:41:45 PM

Clerk of the Superior Court
By Katie Winburn, Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA

# IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| C.B., on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br> MARTIAN SALES, INC.,<br><br>      Defendant. | Case No.  37-2023-00007558-CU-FR-CTL<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

## REDACTED PURSUANT TO L.R. 2.1.2(F)

Plaintiff C.B. ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Martian Sales, Inc., d/b/a O.P.M.S. ("Defendant" or "O.P.M.S.").

## NATURE OF THE ACTION

1.      This is a civil class action lawsuit against Defendant Martian Sales, Inc. for false, misleading, deceptive, and negligent sales practices regarding its kratom powder, capsule, and liquid extract products (the "Products").  Kratom is a dried leaf that is sold as a loose powder, packaged into gel caps, or made into an extract.  However, what reasonable consumers do not know, and Defendant fails to disclose, is that the "active ingredients" in kratom are similar to opioids.  That is, kratom works on the exact same opioid receptors in the human brain as morphine and its analogs, has similar effects as such, and critically, has the same risk of physical addiction and dependency, with similar withdrawal symptoms.  When reasonable consumers think of opiates and opioids, they think of heroin, fentanyl, hydrocodone, oxycodone, and morphine; they do not expect that the "all natural" product bought at their local corner store operates like an opioid, with similar addiction and dependency risks.  Kratom is perniciously addictive – on a whole different level than caffeine or nicotine – and it has sunk its hooks into tens of thousands of unsuspecting consumers and caused them serious physical, psychological, and financial harm.  Here, Defendant intentionally and negligently failed to disclose these material facts anywhere on its labeling, packaging, or marketing materials, and it has violated warranty law and state consumer protection laws in the process.

2.      Defendant relies on its Products' innocuous packaging and the public's limited knowledge about kratom and its pharmacology to get users addicted, while reaping profits along the way.  Reasonable consumers do not expect the bottles and pouches of kratom powder, which they can purchase at gas stations and corner stores, to be like an opioid with the same addictive potential of morphine and its analogs.  Defendant relies on this ignorance and does nothing to correct it.  Such activity is outrageous and is in contravention of California law and public policy.

3.      Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's Products, for: (i) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (ii) violation of California's

Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (iii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (iv) breach of implied warranty; (v) unjust enrichment; (vi) fraud by omission; and (vii) negligent misrepresentation.

4.     Because this action concerns issues of addiction and medical status, Plaintiff is filing under his initials for the sake of his personal privacy.  Plaintiff is a reasonable consumer who fell victim to Defendant's omissions and misrepresentations about the addictive nature of kratom, which operates like an opioid, and became addicted as a result.  Since addiction issues still wrongly carry somewhat of a stigma, Plaintiff is filing this matter anonymously but will reveal his name as necessary to the Court under seal.

## PARTIES

5.     Plaintiff C.B. is a citizen of California who resides in Encinitas, California.

6.     Defendant Martian Sales, Inc., is a Wyoming corporation with its principal place of business in Cheyenne, Wyoming.

7.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to California Business and Professions Code, Sections 17203, 17204 and 17535, and Civil Code, Section 1780.

9.     This Court has personal jurisdiction over the parties because Plaintiff resides in California, is a citizen of California, and submits to the jurisdiction of the Court, and because Defendant has, at all times relevant hereto, systematically and continually conducted, and continues to conduct, business in this State.  Defendant therefore has sufficient minimum contacts with this state, including within this County, and/or intentionally availed itself of the benefits and privileges of the California consumer market through the promotion, marketing, and sale of its

products to residents within this County and throughout this State.  Additionally, Defendant marketed and sold its kratom to Plaintiff in this County.

10.     Pursuant to Civil Code § 1780(d), this Court is the proper venue for this action because Defendant regularly does business in this County, and the same misrepresentations, omissions, and injures giving rise to the claims alleged herein have occurred in this County.

## **FACTUAL ALLEGATIONS**

**Background and Pharmacology of Kratom**

11.     Kratom is a drug[1] which is derived from the kratom plant, *mitragyna speciosa*, indigenous to Southeast Asia, where it has been used in herbal medicine since at least the early 19th Century.  Use of the plant has been particularly well-documented in Thailand, Indonesia, and Malaysia, and it remains popular in each of those countries to this day.  Kratom is the most widely used drug in Thailand, for example.

12.     The first reported use of Kratom in the scientific literature dates back to 1836 when it was noted that the leaves of the tree were used by Malays as a substitute for opium.

13.     The plant's leaves are harvested, dried, and crushed into a fine powder which is then packaged, either straight into a pouch or in capsules, and sold by manufacturers like O.P.M.S.  The drug can also be extracted into a liquid formulation, colloquially called a kratom "shot."

14.     In the West, Kratom is sold through the Internet and at herbal stores, gas stations, corner stores, smoke shops, and "head" shops where it is primarily marketed as an herbal medicine or supplement to treat a variety of ailments (*e.g.*, pain, mental health, opioid withdrawal symptoms), as well as a "legal" or "natural" high by some manufacturers.

15.     The chemicals in the plant which produce a psychoactive effect when ingested are called "alkaloids."

16.     The primary alkaloids in kratom plant leaves responsible for the kratom "high" are Mitragynine[2] ("MG") and 7-hydroxymitragynine ("7-MG").

---

[1] Kratom is unregulated by the FDA, so the usage of the word "drug" here is meant in the colloquial sense, rather than as a defined term under the Food, Drug, and Cosmetic Act.

[2] Pronounced "Mitra-Guy-Neen."

17.     MG and 7-MG exhibit a wide variety of pharmacological effects, resulting in a highly dose-dependent response.  For example, a low dose (0.5 grams to 3 grams) of kratom is typically described as stimulating or energizing, whereas a high dose (3+ grams) is described as euphoric, sedating, and analgesic.  On the whole, however, kratom's high is not overwhelming like it would be for a "hard" drug like cocaine or heroin – it is somewhat more subtle but its effects are nonetheless substantially similar to opiate-based painkillers such as hydrocodone and oxycodone in sufficient dosages.

18.     Kratom's variable but not debilitating effects have always been part of its appeal. For instance, the use of kratom in Southeast Asia has been documented back for at least 150 years and the earliest accounts described both a stimulant effect for use in hard day-labor when fresh leaves are chewed, and an analgesic and relaxing effect if brewed into a tea.

19.     MG and 7-MG produce such a wide spectrum of effects because they interact with many different receptors in the brain.  Studies have shown that MG and 7-MG interact with alpha-2 adrenergic receptors (adrenaline), D2 dopamine receptors, and the serotonin receptors 5-HT2A and 5-HT2C, all of which contribute to the drug's mood-lifting and stimulant-like effects.

20.     Most crucially, MG and 7-MG also interact with the mu-opioid receptor.

21.     The mu-opioid receptor is known as "the gateway to addiction" because it is the receptor which all opiates/opioids interact with to produce the classic opiate high: euphoric, sedating, and analgesic.  This means that MG and 7-MG interact with the primary receptor that heroin and oxycodone interact with.

22.     There are other opioid receptors, but the mu-opioid receptor produces the most "hedonic" or habit-forming effects such as euphoria and analgesia.

23.     Mitragynine and 7-hydroxymitragynine were found to be more potent to the mu-opioid receptor than morphine via oral administration, 7-MG in particular is 17 times more potent than morphine, though the actual effect of kratom is dose-dependent, as discussed above.

24.     Kratom is therefore considered by health professionals to be similar to an "opioid" and a "quasi-opiate."

---

25.     The notion that kratom is substantially similar to an opioid, and a quasi-opiate, is reaffirmed by a few facts.  First, kratom's effects are very similar to those of other opioids.  Second, when administered, kratom alleviates opioid withdrawal symptoms.  Third, repeated use of kratom in itself results in opioid withdrawal symptoms.

26.     All substances which act on the opioid receptors carry a very high risk of addiction, and kratom is no exception.

27.     Addiction occurs when an opioid is ingested on a regular basis.  Over time, the user develops a tolerance to the drug, requiring increased dosages to get the same effects as a lower dose used to have.  As the dosages go up, the body becomes dependent on some amount of the drug to feel normal.  When the drug is suddenly taken away, the user feels much worse than before they started taking the drug: this is what is known as withdrawal.

28.     Opioids are addictive not just because of the pleasurable effects that they produce, but because sudden cessation of opioid use causes severe withdrawal symptoms which users feel compelled to avoid by taking more of the drug.  The tragedy of addiction is that users want to stop, but they cannot.

29.     The symptoms of kratom withdrawal are very similar to those of traditional opiate withdrawal.  Such symptoms include: irritability, anxiety, difficulty concentrating, depression, sleep disturbance including restless legs, tearing up, runny nose, muscle and bone pain, muscle spasms, diarrhea, decreased appetite, chills, inability to control temperature, and extreme dysphoria and malaise.

30.     Users typically start substances like kratom because of how good it makes them feel, but, once addicted, they use them to avoid the pain of withdrawal.  It no longer is about getting high, but about not feeling "sick."

31.     With kratom in particular, users note that the addiction sneaks up on them, and that it feels as though, over time, the color has been sapped from their lives.  Long term users of kratom have reported experiencing depression, anxiety, anhedonia, and reduced sex drive.

**Kratom Use and Addiction in the United States**

32.     Kratom use in the United States has exploded in popularity over the past decade.  As of 2021, the American Kratom Association estimates that kratom is a $1.3 billion a year industry, with 11 million to 15 million annual users in the United States.

33.     Other studies have found that about 1 million people use kratom in the United States every month.  Two-thirds of those users use kratom daily.

34.     Kratom's popularity can be attributed to a number of factors: first, it is often marketed as a safe substitute for painkillers and appeals to those who falsely equate "natural" with "safe;" second, it has received attention from the media as a "nootropic" or "smart" drug because it is stimulating at low doses; third, its popularity has grown simply because it is so widely available, it produces a pleasurable high, and it is unregulated; and finally, users are unaware that it is similar to an opioid with opioid addiction potential.

35.     On the whole, however, kratom is a relatively unknown drug to the average consumer.  Most people in the United States have never heard of it.

36.     The advertisements and commentary about kratom say that it is like a substitute for coffee, a pain reliever, a treatment for opioid withdrawal, an antidepressant, an anti-anxiety supplement, that it improves focus and gives users a boost of energy to get through the day.  These advertisements universally espouse the purported benefits that kratom use can provide, without disclosing that the drug is similar to an opioid with the addictive potential of one.

37.     What's more, because kratom does not produce a debilitating "high" like cocaine or heroin, it is very easy for users to take the drug every day without feeling as though they are developing a drug addiction or harming themselves.  This makes kratom a particularly insidious drug because addiction can sneak up on unsuspecting users and can hold them in its grip despite their best efforts to stop using.

38.     Because the manufacturers and advertisers do not disclose the addictive potential of this drug, many users have found themselves blindsided when they wake up one morning in the throes of withdrawal after having stopped using what they thought was an innocuous supplement.  They then discover just how painfully dependent they have become on kratom.  Because kratom is

relatively unknown in the United States, many did not know where to turn for resources and aid. Some users come together on the Internet to share their experiences and support each other as they attempt to get off the drug.  There are even well-populated and very active Internet forums serving as support groups for those struggling with and recovering from kratom addiction.

39.     The reports from users who have fallen into addiction, or succeeded in escaping the drug's grasp, are heart-wrenching.  Consistent amongst these reports is the initial shock that users felt when they realized they had become unwittingly addicted, and just how difficult it was for them to stop.  Below are just a few accounts from the "Quitting Kratom" forum on www.reddit.com, which has 33,700 members as of January 2023:

About 8 months ago, one user wrote: "I've been on a 50gpd [grams per day] habit for about 4 years. Like most people here, I was in denial that the Kratom was causing my multitude of issues. How could it be the Kratom when everyone keeps telling me how great it is? I made myself believe that I had underlying issues that the Kratom was helping. Spoiler: It wasn't. I slowly became a shell of the person I used to be. TRUE clinical depression symptoms with zero joy in my life. I started browsing this subreddit and reading everyone's stories and I related to every single one. Everyone had the same exact experience I had and at that moment I knew it was the Kratom causing my depression." (emphasis added).

About 2 years ago, another user wrote: "I saw 'A Leaf of Faith' and got the impression that kratom was a generally friendly substance to use freely, never knowing how addictive it was, how much it was further numbing me beyond how alcohol already was, how it was slowly wiping out my sex drive, and likely contributing to my perpetual brain fog. … My second attempt [at quitting] was maybe another 7 or 8 months later. Kratom was making me pretty miserable. I was reading posts in this subreddit and I was finally aware of how addicted I was; feeling crappy, sluggish, and sorta spacey pretty much all the time."

About 2 years ago, another user wrote: "What a difficult journey it has been. I was a ~75 GPD [grams per day] user. Quitting kratom was one of the hardest things I've had to do in my life. I learned the hard way that kratom causes withdrawals on a work trip 3 years ago. I should have stopped then and there but I gave in because the RLS was so bad. … Kratom withdrawal is seriously no joke so don't think you're the only one struggling so much. I'm only a week free but after this experience I know for sure that I will never go back. Good luck everyone!" (emphasis added).

About 2 years ago, another user wrote a post titled *Kratom Is An Addictive Drug*.  It said, in part: "It's been 23 hours since my last dose. I just wanted to give my story hoping that it would help others see that they've been lied to, deceived and manipulated into thinking this plant is 'harmless and safe'. As a matter of fact, reading the horror stories on this subreddit was the first step in my recovery... I started taking it almost 3 years ago after hearing about it on... well, Reddit. They touted it is a miracle plant that had all the benefits of an opioid with none of the side effects." (emphasis added).

About 10 months ago, another user wrote: "I think the perfect word to describe Kratom addiction is 'insidious'. Here is the definition – *'proceeding in a gradual, subtle way, but with harmful effects.'* I think this is why it takes so long to realize what is going on. There

was never a rock bottom moment for me like there would be for other more conventional abused drugs. No overdose, no bad behavior, no abusiveness to my family, no DWI, etc.. - It was just a lazy, slow descent into nothingness. I was living in a groundhogs day type of existence. Wake up, go to work, leave work, buy an extract shot or 2, have dinner, drink my shot, mindlessly look at my phone and/or watch TV. Wake up and do it all over again." (emphasis in original).

About 3 months ago, another user wrote: "I started using k[ratom] when I had knee surgery Dec 2019 so 3 years. I didn't want to use pain killers because I got sober from alcohol 3/6/2018 and i felt the pain killers were going to make me relapse. I didn't know I would end up in a worst place as I am now." (emphasis added).

About 2 years ago, another user wrote: "Was in bed all day yesterday fighting withdrawals. I used to even be an athlete - strong lean and fit, until I got on [kratom] shots and extracts. Didn't even get high any more - just wanted to not feel bad."

About 4 years ago, another user wrote: "I researched kratom before using it and almost every site promoted that its harmless with healthy benefits, and that its withdrawals are like coffee for 3 days max. Information wasn't clear that kratom could become a negative addiction that takes months to recover" … "I took something I thought was helping me for 1.5-2 years, not even knowing the downsides bc that information was so misleading. It fucked up my digestion, energy, mood, brain fog, anxiety, etc. Fuck kratom, and fuck those who peddle it as a harmless cure-all."

About 1 month ago, another user wrote: "For any newcomers: this stuff is absolutely no joke. It's not harmless and the wd [withdrawal] is *definitely* **not** like caffeine. I've cold turkey'd caffeine before and I had a slight headache for a couple hours. I definitely have never woken up in a pool of my own sweat from not having my caffeine. … This stuff is a drug. A serious drug. And it's super freakin addictive. Extracts, powder, or in my case, capsules…it doesn't matter. Yes some forms are more addictive than others but the WD is hellacious no matter how you're taking it." (emphasis original).

About 1 month ago, another user wrote: "This stuff is a drug, and dangerous! I started taking it because of all the good things I heard and read about it. I've never been addicted to or dependent on anything before, but this stuff has totally taken control of my life." (emphasis added).

Less than a month ago, another user wrote: "I finally realized a few weeks ago how much of a negative impact kratom was having on my life. I noticed myself planning my whole day around my doses and making sure when I left the house I'd bring an extra dose with me in a shaker bottle. It was heavily affecting my mood overall, but especially in public settings. I did not want to leave my house most days even if I did dose."

Less than a month ago, another user wrote: "I have been taking OPMS black pills for about a year now. It has ran my bank dry. When I wake up in the morning I fucking crave this shit. I have never been addicted to opiates or anything like that. I get to the point where I am going to go cold turkey and am so confident but when I wake up my brain makes me think its okay to go get it. I cant talk to anyone about this in my family or friends. I have a very high stress job and am also going through a nasty break up. I feel so alone with trying to stop and when I betray myself and go to get more, i fight back tears in the parking lot (I am a grown ass man). I am not an emotional person and in my environment theres no room for emotions. Should I tapper off? What the fuck do I do?"

About 3 months ago, another user wrote of Defendant's product: "I was taking one to two opms gold shots a day (sometimes three) for about two years straight. When the 24hr mark hit the withdrawals kicked in hard. I had become absolutely obsessed with scavenging 20$

togther to make sure I got my shot each day. Constantly driving to the shop, hoping no one would see me pop out. I wanted to quit every night but just couldn't stand the withdrawals. I finally quit (on day 17 ct) with the help of a quit buddy I found in this sub. I'm still not right at all, RLS is there and my sleep is still off. I'm sneezing more than I ever have. But, music is back, I have more money in my pocket and I feel free from the grips. I've still got a long ways to go but am committed to never touching that shit again. It brought out the worst version of me."

40.     This Internet forum is filled with accounts just like these.  The stories are consistent – well-meaning people who were looking to feel better, in mind body and spirit, by taking an "herbal supplement," only to end up with an opioid-like addiction.

41.     What is particularly insidious about kratom is that, at the early stages, many users are unaware of its negative side effects and its addictive potential, so when they begin to experience the malaise of addiction they do not attribute it to the kratom.  Rather, they take more of the substance thinking that it is helping them with their malaise.

42.     As these accounts make clear, the addictive potential of kratom is a material fact to reasonable consumers which would help inform their purchase and consumption decisions. Defendant's products have no information, whatsoever, that kratom is similar to an opioid, is habit-forming, and that regular use will result in opioid-like dependency, with withdrawal symptoms similar to those of traditional opioids.

43.     Consumers who knew the truth about kratom may not have purchased Defendant's Products or would have paid less than they did for them.

**Defendant Knew or Should Have Known it was Selling a Highly Addictive Drug to Unsuspecting Consumers**

44.     Despite its traditional medical uses, kratom dependence has been known and observed for a long time and is well-documented in Southeast Asia, where the plaint originates and has a longer period of historical use.

45.     Addiction to kratom among users in Thailand and Malaysia has been documented by scientists and researchers in the United States since at least 1988.

46.     Defendant operates under the brand name O.P.M.S. (short for Optimized Plant Mediated Solutions) and is the largest producer and seller of kratom products in the United States.

47.     Notably, Defendant specializes in kratom extracts.  As Defendant's website notes: "O.P.M.S. has been an industry-leading supplier of Kratom extract for more than 5 years.  By utilizing O.P.M.S.'s patented extraction process, they have set a new quality, an unrivaled standard in the botanicals market."

48.     Defendant's brand name appears to be a tongue in cheek nod to the power of its extracts: the "OPM" in "O.P.M.S." is intended to sound like "opium" when said aloud.  As such, Defendant literally incorporated a reference to "opium" into its trade name and branding.

49.     Kratom extracts are a concentrated form of kratom, whereby the active kratom alkaloids (MG and 7-MG included) are distilled from the leaf powder and sold in powder or liquid preparations.

50.     The purpose of kratom extracts is to create a vastly more potent product as there is a greater concentration of MG and 7-MG, and all other alkaloids, by weight compared to regular powder kratom.  For example, a single O.P.M.S. Gold Extract capsule, which contains 200mg of kratom extract, has MG and 7-MG in doses equivalent to 4-7 grams of kratom powder.

51.     The liquid extracts are even more potent, with one 8.8ml "shot" of O.P.M.S. Gold Liquid Extract having MG and 7-MG in doses equivalent to 10-15 grams of kratom powder and one "shot" of O.P.M.S. Black Liquid Extract being the equivalent of well over 15 grams of kratom powder.

52.     Defendant's "Black" line of extracts go even further, with 7-MG concentrations 35 times greater than their "Gold" extracts and regular kratom leaf powder.  As discussed above, 7-MG is 17 times more potent on the mu-opioid receptor than morphine.  Thus, the 7mg of 7-MG in a single O.P.M.S. Black Extract capsule is equivalent to roughly 119mg of morphine.

53.     The consequence of extraction is that consumers are exposed to significantly elevated levels of MG and 7-MG compared with those who take regular kratom.  This produces greater euphoria and "feel good" effects at first, but only leads to deeper addiction down the road.

54.     No matter what Product consumers take, they are exposed to highly concentrated forms of kratom without knowing just how addictive the extracts, in particular, can be.

55.     Upon information and belief, Defendant has interacted with growers and distributors in Southeast Asia who have disclosed the addictive nature of kratom to it.

56.     Even without such interactions, Defendant has received numerous user reports about the addictive potential of kratom in the United States.

57.     Moreover, Defendant holds itself out as an expert in kratom's pharmacology, stating: "O.P.M.S. characterized all apparent alkaloids of the *Mitragyna Speciosa* plant and then determined the most optimal conditions to safely and effectively remove each individual component," and that "during the most common processes used by our competitors, some significant alkaloids are flushed out in the process, leading to inferior products."

58.     If Defendant has been able to characterize each of the kratom plant's alkaloids, and understands which of them are "significant" then Defendant is aware of the interaction between MG and 7-MG (the two primary alkaloids in kratom) and the mu-opioid receptor.

59.     Defendant therefore knew or should have known that the Products they were selling were highly addictive.

60.     Despite this knowledge, Defendant has failed to disclose the addictive potential of kratom on its website or on its Products' packaging.

61.     The furthest that Defendant goes in "disclosing" the addictive nature of kratom is a single sentence buried in the "DISCLAIMER" page on its website.  It states: "[s]ome publications have suggested kratom may be associated with serious potential side effects, including seizures, liver damage, withdrawal, addiction, abuse, and death."  This is deliberately misleading, and further no such disclaimer is made on the Product packaging in stores, where consumers are most likely to encounter Defendant's statements.  The addictiveness of kratom has been well-documented for decades and is an established fact in the medical literature.  The pharmacological effects of MG and 7-MG have been thoroughly studied, and it is well-established that MG and 7-MG act on the same mu-opioid receptors in the brain as traditional opioids.  Further, there are widespread user reports and case studies of addiction and dependency issues.

62.     To reiterate, this is not an instance where the science is still up for debate.  It has been known for decades in the English-speaking world that kratom is highly addictive and has the

potential to cause physical and psychological dependence in regular users.  It has been known for over a century in Southeast Asia that kratom is addictive.

63.     For example, kratom is the most commonly used drug in Thailand.  A 2007 study found that 2.3% of people in Thailand have used kratom.  Many of those users have developed a dependence on kratom to avoid withdrawal.

64.     On information and belief, Defendant imports some of its kratom Products from Thailand.

65.     Defendant therefore knows or should have known that kratom users can develop an addiction.  Yet, Defendant fails to disclose this material fact on its website or its Products' packaging.

66.      Defendant's Products' packaging, in particular, is woefully sparse. A representative image of Defendant's Products is depicted below:




67.     On the back of each Product's packaging is a bog-standard disclaimer stating that users take responsibility for any adverse events or health complications.

68.     Defendant's kratom extract bottle labeling is substantially the same, with minimal disclosures or warnings:



69.     There is no warning to consumers that the Product interacts with opioid receptors, nor is there any warning that the product is highly addictive and that it should not be taken on a regular basis.

70.     Further, the packaging itself is innocuous.  The company logo includes a pleasant-looking green leaf, a filigree is printed on either side of the word "gold" and in each corner of the package is a segment of what looks to be an ornamental frame.   The extract bottle is reminiscent of a "5-Hour Energy" brand bottle.  Nothing about this packaging would lead reasonable consumers to believe they were purchasing compounds similar to opioids, that function on the same mu-opioid receptors in the brain.

71.     Reasonable consumers looking at the Products' packaging would not presume that kratom is highly addictive.

72.     Defendant's website is sparse as well, with most of the text on each page dedicated to extolling its "high pressure/cold water extraction process that preserves the natural integrity of the plant's alkaloids."  The only representations that Defendant makes about the properties of its Products is that they are "all-natural" and "the pinnacle of all kratom products."

73.     The only outlier is Defendant's "Black" line of kratom Products, which contains the highest doses of MG and 7-MG.  On each of those product pages Defendant states that the Product "will quickly become a favorite among our customers."   Perhaps this is because consumers are unwittingly ingesting 7-MG at levels high enough to mimic the effects of a sizable dose of morphine.

74.     Nowhere does Defendant mention that kratom presents the same addiction problems that former opioid users and other consumers would want to avoid.  Those seeking help as they come off opioids may be drawn in by Defendant's statements about kratom without knowing that they risk trading one addiction for another.

75.     The consequences of this addiction are not mild, as a World Health Organization report on kratom notes: "in humans, opioid-like withdrawal symptoms have been reported following cessation of kratom use," though "the withdrawal syndrome appears to be less severe than withdrawal from morphine."

76.     While kratom withdrawal may be "less severe" than morphine withdrawal, that is hardly a seal of approval – morphine withdrawal is one of the most unpleasant experiences that one can endure in modern life.  And kratom withdrawal, while perhaps "less severe" than morphine withdrawal, is still an "opioid-like withdrawal" (according to the World Health Organization), with the same physical and mental symptoms.  And kratom is unquestionably addictive and habit-forming.

77.     The risk of "opioid-like withdrawal symptoms" is a material fact to reasonable consumers.

78.     As a kratom product manufacturer and distributor, Defendant occupied a position of superior knowledge to the average reasonable consumer, who likely knows next to nothing about kratom.

79.     Defendant, through its misleading advertising and its failure to disclose kratom's addictive properties on its Products' labels, relied upon the average consumer's incomplete knowledge of kratom to sell its Products and get users addicted to kratom.

80. Defendant fails to disclose kratom's addictive potential because Defendant knows that it is a material fact to reasonable consumers which would influence their purchasing and consumption decisions, likely to Defendant's detriment.

81. By any metric, Defendant's conduct is immoral, unethical, and contrary to California public policy.

82. The United States is going through an opiate crisis that is shaking the foundations of our society. Amid this crisis, Defendant is creating more addicts for no reason other than to line its pockets, without adequate disclosures of its products' risks and through the use of false and misleading packaging. That cannot – and should not – be allowed, at least when their conduct entails breaches of warranty and violation of state consumer protection statutes (as it does here).

**Plaintiff's Experience**

83. Plaintiff C.B. first heard about kratom through a friend who did not mention the risks of dependency or addiction. As such, C.B. did not know that kratom was addictive and had no reason to know. He began purchasing O.P.M.S. branded kratom extracts in 2018. When C.B. made his first purchase, he reviewed the O.P.M.S. packaging and labels, but there were no disclosures on the package that would have corrected his misimpression. Because there were no disclosures, C.B. thought that O.P.M.S. kratom could be consumed every day without the risk of physical dependence. C.B. later discovered that O.P.M.S. kratom was, in fact, addictive, and found himself requiring larger and larger doses to stave off withdrawal. For four years, C.B. took "shots" of O.P.M.S. kratom extract every day, starting with Gold and then moving up to Black. At its worst, C.B. was taking 4-5 extract shots per day, costing $560 to $700 a week. When C.B. attempted to cease using kratom he was wracked by intense physical and psychological withdrawal symptoms that were substantially similar to traditional opiates. C.B. realized he was addicted to kratom in 2020 and felt that he was being held captive by the specter of withdrawal. Though C.B. wanted to stop, he could not. At its worst, C.B.'s addiction to O.P.M.S. kratom was costing him thousands of dollars a month. C.B. was eventually able to kick his addiction to O.P.M.S. kratom, but not without going through intense physical and psychological withdrawals. Had C.B. known

that kratom was so addictive, and that cessation would be so difficult, he would never have purchased the Products. C.B. made his purchases in and around San Marcos, California.

## CLASS ALLEGATIONS

84. **Class Definition**. Plaintiff brings this action pursuant to Code of Civil Procedure § 382 and Civil Code § 1781 on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All persons in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, purchased O.P.M.S. kratom products.

85. Specifically excluded from the Class are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

86. Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

87. **Numerosity.** Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, the Class comprises at least thousands of consumers throughout California. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

88. **Commonality and Predominance**. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

    a. whether the labels on Defendant's Products have the capacity to mislead reasonable consumers;

    b. whether Defendant knew that kratom is a highly addictive substance;

    c. whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§

1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

    d.  whether Defendant's conduct alleged herein constitutes unjust enrichment;

    e.  whether Defendant's conduct constitutes negligent omission;

    f.  whether Plaintiff and the Class are entitled to damages and/or restitution;

    g.  whether Plaintiff and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

89.    ***Typicality.***  The claims of Plaintiff are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to inform Plaintiff and all others similarly situated that its Products are highly addictive and akin to opioids.

90.    ***Adequacy***.  Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

91.    ***Superiority***.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

92.    Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

93.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

94.    Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

## FIRST COUNT
### Violations of California's Unfair Competition Law ("UCL"),
### Cal. Bus. & Prof. Code §§ 17200, *et seq*.

95.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

96.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

97.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200.  A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

98.     As alleged below, Defendant has committed unlawful, fraudulent, and/or unfair business practices under the UCL by: (a) representing that Defendant's Products have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); (c) selling addictive substances to unsuspecting consumers and profiting from their addiction; and (d) failing to disclose that its Products pose a serious risk of addiction;

99.     Defendant's conduct has the capacity to mislead a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances.

100.    Defendant's conduct has injured Plaintiff and the Class he seeks to represent in that he paid money for a product that he would not have purchased or paid more than he would have but for Defendant's failure to disclose the addictive nature of its Products.  Such injury is not outweighed by any countervailing benefits to consumers or competition.  Indeed, no benefit to consumers or competition results from Defendant's conduct.  Since consumers reasonably rely on

Defendant's labels, and thus also its omissions, consumers could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 597-98 (2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010) (outlining the third test based on the definition of "unfair" in Section 5 of the FTC Act).

101.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class members seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other Class members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff and the Class members' attorneys' fees and costs.

102.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product. Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which they are entitled.

103.    Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Product so that Plaintiff and Class members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

104.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the full premium price, and an injunction requiring Defendant to disclose on its Products' packaging that kratom is addictive will ensure that Plaintiff is in the same place they would have been in had Defendant's wrongful conduct not occurred, *i.e.*, in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their disposal.

## SECOND COUNT
### Violation of California's Consumers Legal Remedies Act,
### Cal. Civ. Code §§ 1750, *et seq.*

105.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

106.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

107.    Plaintiff and Class Members are consumers within the meaning of Cal. Civ. Code § 1761(d).

108.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which she or she does not have."

109.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

110.    Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

111.    Defendant violated Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) by intentionally and misleadingly representing that its Products are "all natural" and by failing to disclose that its Products are addictive, a fact which is material to reasonable consumers.

112.    Defendant's misrepresentations and omissions deceive and have a tendency and ability to deceive the general public.

113.    Defendant has exclusive or superior knowledge of kratom's addictive nature, which was not known to Plaintiff or Class Members.

114.    Plaintiff and Class Members have suffered harm as a result of these violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA") because they have incurred charges and/or paid monies for the Products that they otherwise would not have incurred or paid had they known that kratom is addictive and causes withdrawals.  As a result, Plaintiff and the Classes are entitled to actual damages in an amount to be proven at trial, reasonable attorneys' fees and costs, declaratory relief, and punitive damages.

115.    On January 11, 2023, Plaintiff's counsel sent Defendant a CLRA notice letter, which complies in all respects with Cal. Civ. Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the

1    monies received therefrom.  The letter stated that it was sent on behalf of all other similarly

2    situated purchasers.

3                                    **THIRD COUNT**
     **Violation of California's False Advertising Law,**
4       **Cal. Bus. & Prof. Code §§ 17500, *et seq.***

5        116.   Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

6        117.   Plaintiff brings this claim individually and on behalf of the Class against Defendant.

7        118.   Defendant's acts and practices, as described herein, have deceived and/or are likely

8    to continue to deceive Class Members and the public.  As described above, and throughout this

9    Complaint, Defendant misrepresented that kratom is not addictive.  Such representation is not true.

10       119.   By its actions, Defendant disseminated uniform advertising regarding its kratom

11   Products to and across California.  The advertising was, by its very nature, unfair, deceptive,

12   untrue, and misleading within the meaning of California's False Advertising Law, Cal. Bus. &

13   Prof. Code §§ 17500, *et seq.* (the "FAL").  Such advertisements were intended to and likely did

14   deceive the consuming public for the reasons detailed herein.

15       120.   The above-described false, misleading, and deceptive advertising Defendant

16   disseminated continues to have a likelihood to deceive in that Defendant continues to misrepresent,

17   without qualification, that kratom is not addictive.

18       121.   In making and disseminating these statements, Defendant knew, or should have

19   known, its advertisements were untrue and misleading in violation of California law.  Defendant

20   knows that kratom is addictive yet fails to disclose this fact to consumers.

21       122.   Plaintiff and other Class Members purchased O.P.M.S. Kratom based on

22   Defendant's representations and omissions that kratom is not addictive.

23       123.   The misrepresentations and non-disclosures by Defendant of the material facts

24   described and detailed herein constitute false and misleading advertising and, therefore, constitutes

25   a violation of the FAL.

26       124.   As a result of Defendant's wrongful conduct, Plaintiff and Class Members lost

27   money in an amount to be proven at trial.  Plaintiff and Class Members are therefore entitled to

28   restitution as appropriate for this cause of action.

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                    22

125.     Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5; and other appropriate equitable relief.

## FOURTH COUNT
### Breach of Implied Warranty

126.     Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

127.     Plaintiff brings this claim individually and on behalf of the Class against Defendant.

128.     This claim is brought pursuant to the laws of the State of California.

129.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, impliedly warranted that that kratom is not addictive and does not cause opioid-like withdrawal symptoms.

130.     Defendant breached this warranty implied in the contract for the sale of its kratom Products because the Products could not pass without objection in the trade under the contract description: the kratom Products were not adequately contained, packaged, and labeled as per Defendant's contract with Plaintiff and members of the Classes, and the Products do not conform to the implied affirmations of fact made on the marketing and packaging for the Products that the Products are not addictive and do not cause withdrawals.  U.C.C. §§ 2-313(2)(a), (e), (f).  As a result, Plaintiff and members of the Classes did not receive the goods as impliedly warranted by Defendant to be merchantable.

131.     Plaintiff and members of the Classes purchased the Products in reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose.

132.     The kratom Products were defective when they left the exclusive control of Defendant.

133.     Plaintiff and members of the Classes did not receive the goods as warranted.

134.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and members of the Classes have been injured and harmed because: (a) they would not have purchased O.P.M.S. Kratom on the same terms if they knew that the Product was addictive

and could cause opioid-like withdrawal symptoms; and (b) the Products do not have the characteristics, uses, or benefits as promised by Defendant.

135.    On January 11, 2023, prior to filing this action, Defendant was served with a pre-suit notice letter on behalf of Plaintiff that complied in all respects with U.C.C. §§ 2-314 and 2-607.  Plaintiff's counsel sent Defendant a letter advising Defendant that it breached an implied warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.

### FIFTH COUNT
**Unjust Enrichment**

136.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

137.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant under the laws of California.

138.    Plaintiff and the Class members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money they paid to Defendant.

139.    Defendant had an appreciation or knowledge of the benefit conferred on it by Plaintiff and the Class members.

140.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and the Class members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because Defendant omitted that the Products were addictive and similar to opioids.  This caused injuries to Plaintiff and members of the Classes because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

141.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products to Plaintiff and the Class members.

142.    Defendant has thereby profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

143.    Plaintiff and the Class members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

144.    As a direct and proximate result of Defendant's actions, Plaintiff and Class members have suffered in an amount to be proven at trial.

145.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from their purchase of the Product is determined to be an amount less than the premium price of the Product.  Without compensation for the full premium price of the Product, Plaintiff would be left without the parity in purchasing power to which they are entitled.

146.    Injunctive relief is also appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the Product so that Plaintiff and Class members can reasonably rely on Defendant's packaging as well as those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

147.    Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price will ensure that Plaintiff is in the same place they would have been in had Defendant's wrongful conduct not occurred, i.e., in the position to make an informed decision about the purchase of the Products absent omissions with the full purchase price at their disposal.

### SIXTH COUNT
**Fraud by Omission**

148.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

149.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

150.    Defendant distributed its Products throughout the State of California.

151.    Defendant misrepresented that its kratom Products have attributes or qualities that they do not have by failing to disclose that kratom is addictive and can cause opioid-like withdrawal.

152.    Defendant knows that kratom is addictive because it interacts with kratom vendors, has been made aware of user reports, and has fully characterized kratom's alkaloids and created advanced extraction methods.

153.    Defendant knows that knowledge of kratom's addictive nature is a material fact that would influence the purchasing decision of reasonable consumers.

154.    The average reasonable consumer in the kratom purchasing context does not know that kratom is addictive and cannot reasonably access that information.

155.    Defendant therefore had a duty to Plaintiff and the Class members to disclose that kratom is addictive and can cause withdrawals on the Products' packaging.

156.    Consumers reasonably and justifiably relied on Defendant's omission because it is reasonable to assume that a product which is addictive like an opioid would bear some kind of a warning.

157.    As a result of Defendant's omission, Plaintiff and the Class members paid for kratom Products they may not have purchased, or paid more for those Products than they would have had they known the truth about kratom.

## SEVENTH COUNT
### Negligent Misrepresentation

158.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

159.    Plaintiff brings this claim individually and on behalf of the Class against Defendant.

160.    Defendant distributed its Products throughout the state of California.

161.    Defendant misrepresented that its kratom Products have attributes or qualities that they do not have by failing to disclose that kratom is addictive and can cause opioid-like withdrawal.

162.    Defendant knew or should have known that kratom is addictive because it interacts with kratom vendors and has been made aware of user reports and scientific studies.

163.    Defendant knew or should have known that knowledge of kratom's addictive nature is a material fact that would influence the purchasing decision of reasonable consumers.

164.     The average reasonable consumer in the kratom purchasing context does not know that kratom is addictive and cannot reasonably access that information.

165.     Defendant therefore had a duty to Plaintiff and the Class members to disclose that kratom is addictive and can cause withdrawals on the Products' packaging.

166.     Consumers reasonably and justifiably relied on Defendant's omission because it is reasonable to assume that a product which is addictive like an opioid would bear some kind of a warning.

167.     As a result of Defendant's omission, Plaintiff and the Class members paid for kratom Products they may not have purchased, or paid more for those Products than they would have had they known the truth about kratom.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff C.B., individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.     For an order certifying the Class and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.     For an order declaring Defendant's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.     For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For injunctive relief as pleaded or as the Court may deem proper; and

h.     For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

1

Dated:  February 22, 2023                    Respectfully submitted,

2

**BURSOR & FISHER, P.A.**

3

By: _____

4

Neal J. Deckant

5

Neal J. Deckant (State Bar No. 322946)

6

Luke W. Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940

7

Walnut Creek, CA 94596
Telephone: (925) 300-4455

8

Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com

9

lsironski@bursor.com

10

*Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Neal J. Deckant, declare as follows:

1.      I am counsel for Plaintiff, and I am a partner at Bursor & Fisher, P.A.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiff resides in this District.

3.      Plaintiff C.B. is a resident of Encinitas, California.

4.      Defendant Martian Sales, Inc., is a Wyoming corporation with its principal place of business in Cheyenne, Wyoming.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct, executed on February 22, 2023, at Walnut Creek, California.


_____
Neal J. Deckant

F I L E D

Clerk of the Superior Court

**FEB 2 2 2023**

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Luke W. Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
      lsironski@bursor.com

**ELECTRONICALLY RECEIVED**
Superior Court of California,
County of San Diego

**02/22/2023** at 05:41:45 PM

Clerk of the Superior Court
By Katie Winburn, Deputy Clerk

*Attorneys for Plaintiff*

# SUPERIOR COURT OF CALIFORNIA

# IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| C.B., on behalf of himself and all others similarly situated,<br><br>               Plaintiff,<br><br>    v.<br><br>MARTIAN SALES, INC.,<br><br>              Defendant. | Case No.   37-2023-00007558-CU-FR-CTL<br><br>**MOTION TO PROCEED UNDER PSEUDONYM** |

## MOTION TO PROCEED UNDER PSEUDONYM

Pursuant to Local Rule 2.1.2(F) and California Rule of Court 2.550–2.585, Plaintiff C.B. moves the Court to proceed in his class action complaint under his initials, and to use his initials in all other public-facing identifying documents during the pendency of the case. The basis for the motion is that publicizing Plaintiff's true name will cause him harm.

The nature of the complaint is that Defendant sold a highly addictive and unregulated drug, called kratom, to the unsuspecting public. Kratom is a drug which allegedly acts on the opioid receptors in the brain in a similar manner to morphine, heroin, and oxycodone, leading to many of the same symptoms and withdrawal effects that an opioid addict may experience.

Plaintiff C.B. became deeply addicted to kratom and suffered physical, financial, and psychological harm. As a result, the proceedings will necessarily involve discussion of C.B.'s history of addiction along with his general medical history. There is no doubt that drug addiction is highly stigmatized in our society, and that C.B. would be subjected to such stigma if his full name were to become public, leading to harm in his personal and professional life. In fact, in the event that this motion is denied, Plaintiff requests that the Court terminate the action and *not* file any documents with Plaintiff's name publicly.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PLAINTIFF HAS STANDING TO REQUEST ANONYMITY

California Code of Civil Procedure § 367 does not prohibit pseudonymous litigation. The statute provides: "every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." (*See* Cal. Code. Civ. Pro. §367). California courts have interpreted this to mean that a lawsuit must be brought on behalf of a person having legal standing to commence the action, and not as a statute that controls whether or not a pseudonym is appropriate in a given case. *See Doe v. Lincoln Unified Sch. Dist.*, 188 Cal. App. 4th 758, 766 (2010) (holding that § 367 does not preclude filing under a pseudonym and discussing how and when pseudonymous filing should be used). Here, as discussed in the attached complaint, Plaintiff C.B. has standing to pursue the action because he was harmed by Defendant's conduct in San Diego County. Accordingly, C.B. may file under his initials.

## II.   PLAINTIFF WOULD SUFFER HARM AND EMBARASSMENT IF HIS FULL NAME WERE USED BECAUSE THE NATURE OF HIS CONDITION IS HIGHLY PERSONAL AND STIGMATIZED

Drug addiction, and especially opiate addiction, has long been demonized in the United States.  From the Chinese opium dens in San Francisco, to the depiction of the addict's experience in William S. Burrough's "Junkie," to the decades-long "war on drugs," society has (unfairly) put addicts on its lowest rung.  Plaintiff C.B. was addicted to the drug kratom, which operates in part like an opiate, for years, and lost tens of thousands of dollars as a result.  A class action complaint is a public filing.  This one will no doubt garner interest from the media, given the growth in interest in kratom over the recent years, including a failed attempt by the U.S. Food and Drug Administration ("FDA") and U.S. Drug Enforcement Agency ("DEA") to get the drug scheduled.  Should C.B.'s full name be disclosed, he would suffer immense embarrassment and harm, particularly in an age where information is quickly disseminated across the Internet.  In plain English, Plaintiff C.B. wants to avoid a scenario where "Googling" his name immediately brings up this case, and identifies him as having struggled with addiction.

In California, the "judicial use of 'Doe plaintiffs' to protect legitimate privacy rights has gained wide currency, particularly given the rapidity and ubiquity of disclosures over the [Internet]," particularly in cases where plaintiff would be further stigmatized by disclosing their name in court documents.  *Starbucks Corp. v. Superior Court*, 168 Cal. App. 4th 1436, 1452 (2008); *see also, Doe v. City of Los Angeles*, 42 Cal. 4th 531 (2007) (former Boy Scouts sued under pseudonym based on allegations that city police officer sexually assaulted them while they were teenagers); *M.G. v. R.D.*, No. B159974,  2003 WL 21129878, at *3 (Cal. Ct. App. May 16, 2003) (plaintiff was the victim of Defendant's internet campaign to ruin plaintiff's reputation by disseminating private "sex tapes" and sending malicious emails about plaintiff to friends, family, and co-workers).

In *Starbucks*, job applicants alleged that Starbucks' inquiry into their more than two-year-old marijuana convictions was a violation of California law.  168 Cal. App. 4th at 1441.  The law was an effort by the California legislature to guard against the stigma brought on by a drug conviction.  *Id.* at 1449.  In discussing the law, the Court of Appeal also noted that "[o]ther means

1   involving protective nondisclosure of identity (e.g., identifying a plaintiff by his or her initials or a

2   pseudonym like 'John Doe' or 'Jane Doe') may be used in appropriate circumstances to protect

3   persons convicted of relatively minor marijuana offenses from being further stigmatized." *Id.* at

4   1452.

5          The California Supreme Court has also weighed in on the stigma that drug users and addicts

6   face. In *People v. Thomas*, the Court was deciding on the standard of proof needed to commit a

7   drug addict to involuntary rehabilitation. 19 Cal. 3d 630, 633 (1977). The Court held that the

8   standard of proof of addiction needed to be beyond a reasonable doubt, reasoning that "[a] person

9   committed as a narcotics addict suffers so severe a curtailment of liberty and *so lingering a*

10  *moral stigma* that he is entitled to the same standard of proof beyond a reasonable doubt accorded

11  to a criminal defendant." *Id.* at 644 (emphasis added). In fact, the California Court of appeals has

12  noted that one's status as a drug addict is even more stigmatizing than being a gang member. *See*

13  *People v. Englebrecht,* 88 Cal. App. 4th 1236, 1253 (2001) ("While some social stigma might arise

14  from the finding that Englebrecht is a gang member, *it is not the same order of stigma arising from*

15  *a criminal verdict or a finding that one is … a narcotics addict.*") (emphasis added).

16         The Ninth Circuit has permitted parties to proceed anonymously in civil lawsuits and

17  petitions when "anonymity is necessary 'to preserve privacy in a matter of sensitive and highly

18  personal nature.'" *Does I thru XXII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068 (9th Cir. 2000)

19  (internal quotation omitted). In addition, the Ninth Circuit allows parties to use pseudonyms

20  "when nondisclosure of the party's identity is necessary … to protect a person from harassment,

21  injury, ridicule, or personal embarrassment." *United States v. Doe* 655 F.2d 920, 922 n. 1 (9th Cir.

22  1981); *see also Advanced Textile*, 214 F.3d at 1068-1069.

23         In *Advanced Textile*, the court held that "a party may preserve his or her anonymity in

24  judicial proceedings in special circumstances when the party's need for anonymity outweighs

25  prejudice to the opposing party and the public's interest in knowing the party's identity." 214 F.3d

26  at 1068. The court must determine the "precise prejudice at each stage of the proceedings to the

27  opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Id.*

28  The court must finally decide whether the public's interest in the case would be best served by

1 requiring that the litigant reveal his or her identity. *Id.* With regard to the last point, the Ninth

2 Circuit has adopted the Fifth Circuit's view that "[p]arty anonymity does not obstruct the public's

3 view of the issues joined or the court's performance in resolving them." *Id.* at 1068-1069 (quoting

4 *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

5       Here, there can be no doubt that Plaintiff C.B. would face intense stigma from the public at

6 large and potential backlash from the kratom industry if his full name was disclosed in the

7 proceedings. As discussed above, California courts and the California legislature have recognized

8 that drug use and addiction confer a heavy moral stigma onto the user. Such a stigma can be

9 avoided if Plaintiff were allowed to proceed under his initials. Further, Plaintiff is at risk of

10 retaliation should he disclose his name. The kratom industry in the United States is enormous, and

11 Defendant is one of the largest sellers in the country. Public opposition to proposed DEA

12 regulation to kratom in 2016 was fierce, with over 20,000 comments on the www.regulation.gov

13 website, and this case is highly likely to bring the regulation discussion back into the spotlight.

14 The purpose of this class action is to vindicate consumer rights across the country, but the threat of

15 stigma and industry retaliation may prevent representative plaintiffs from stepping forward on

16 behalf of the public. Such a result would run counter to the public interest in ensuring that

17 businesses conduct themselves ethically and legally, an interest which far exceeds the limited

18 benefit conferred in knowing a single class action plaintiff's name. If this motion is denied,

19 Plaintiff requests that the Court terminate this matter and not submit his full name publicly on the

20 record.

21

22 Dated: February 22, 2023                Respectfully submitted,

23                                      **BURSOR & FISHER, P.A.**

24                                  By: _____

25                                       Neal J. Deckant

26                                  Neal J. Deckant (State Bar No. 322946)
                                      Luke W. Sironski-White (State Bar No. 348441)

27                                  1990 North California Blvd., Suite 940
                                      Walnut Creek, CA 94596

28                                  Telephone: (925) 300-4455

1

Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
          lsironski@bursor.com

*Attorneys for Plaintiff*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Luke W. Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
   lsironski@bursor.com

*Attorneys for Plaintiff*

**ELECTRONICALLY RECEIVED**
Superior Court of California,
County of San Diego

**02/22/2023** at 05:41:45 PM
Clerk of the Superior Court
By Katie Winburn,Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA

# IN AND FOR THE COUNTY OF SAN DIEGO

|  |  |
|---|---|
| C.B., on behalf of himself and all others similarly situated, | Case No.   37-2023-00007558-CU-FR-CTL |
|      Plaintiff, | **MOTION TO PROCEED UNDER PSEUDONYM** |
|   v. |  |
| MARTIAN SALES, INC., |  |
|      Defendant. |  |

## MOTION TO PROCEED UNDER PSEUDONYM

Pursuant to Local Rule 2.1.2(F) and California Rule of Court 2.550–2.585, Plaintiff C.B. moves the Court to proceed in his class action complaint under his initials, and to use his initials in all other public-facing identifying documents during the pendency of the case.  The basis for the motion is that publicizing Plaintiff's true name will cause him harm.

The nature of the complaint is that Defendant sold a highly addictive and unregulated drug, called kratom, to the unsuspecting public.  Kratom is a drug which allegedly acts on the opioid receptors in the brain in a similar manner to morphine, heroin, and oxycodone, leading to many of the same symptoms and withdrawal effects that an opioid addict may experience.

Plaintiff C.B. became deeply addicted to kratom and suffered physical, financial, and psychological harm.  As a result, the proceedings will necessarily involve discussion of C.B.'s history of addiction along with his general medical history.  There is no doubt that drug addiction is highly stigmatized in our society, and that C.B. would be subjected to such stigma if his full name were to become public, leading to harm in his personal and professional life.  In fact, in the event that this motion is denied, Plaintiff requests that the Court terminate the action and ***not*** file any documents with Plaintiff's name publicly.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   PLAINTIFF HAS STANDING TO REQUEST ANONYMITY

California Code of Civil Procedure § 367 does not prohibit pseudonymous litigation.  The statute provides: "every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute."  (*See* Cal. Code. Civ. Pro. §367).  California courts have interpreted this to mean that a lawsuit must be brought on behalf of a person having legal standing to commence the action, and not as a statute that controls whether or not a pseudonym is appropriate in a given case.  *See Doe v. Lincoln Unified Sch. Dist.*, 188 Cal. App. 4th 758, 766 (2010) (holding that § 367 does not preclude filing under a pseudonym and discussing how and when pseudonymous filing should be used).  Here, as discussed in the attached complaint, Plaintiff C.B. has standing to pursue the action because he was harmed by Defendant's conduct in San Diego County.  Accordingly, C.B. may file under his initials.

**II.   PLAINTIFF WOULD SUFFER HARM AND EMBARRASSMENT IF HIS FULL NAME WERE USED BECAUSE THE NATURE OF HIS CONDITION IS HIGHLY PERSONAL AND STIGMATIZED**

Drug addiction, and especially opiate addiction, has long been demonized in the United States.  From the Chinese opium dens in San Francisco, to the depiction of the addict's experience in William S. Burrough's "Junkie," to the decades-long "war on drugs," society has (unfairly) put addicts on its lowest rung.  Plaintiff C.B. was addicted to the drug kratom, which operates in part like an opiate, for years, and lost tens of thousands of dollars as a result.  A class action complaint is a public filing.  This one will no doubt garner interest from the media, given the growth in interest in kratom over the recent years, including a failed attempt by the U.S. Food and Drug Administration ("FDA") and U.S. Drug Enforcement Agency ("DEA") to get the drug scheduled.  Should C.B.'s full name be disclosed, he would suffer immense embarrassment and harm, particularly in an age where information is quickly disseminated across the Internet.  <u>In plain English, Plaintiff C.B. wants to avoid a scenario where "Googling" his name immediately brings up this case, and identifies him as having struggled with addiction.</u>

In California, the "judicial use of 'Doe plaintiffs' to protect legitimate privacy rights has gained wide currency, particularly given the rapidity and ubiquity of disclosures over the [Internet]," particularly in cases where plaintiff would be further stigmatized by disclosing their name in court documents.  *Starbucks Corp. v. Superior Court*, 168 Cal. App. 4th 1436, 1452 (2008); *see also, Doe v. City of Los Angeles*, 42 Cal. 4th 531 (2007) (former Boy Scouts sued under pseudonym based on allegations that city police officer sexually assaulted them while they were teenagers); *M.G. v. R.D.*, No. B159974,  2003 WL 21129878, at *3 (Cal. Ct. App. May 16, 2003) (plaintiff was the victim of Defendant's internet campaign to ruin plaintiff's reputation by disseminating private "sex tapes" and sending malicious emails about plaintiff to friends, family, and co-workers).

In *Starbucks*, job applicants alleged that Starbucks' inquiry into their more than two-year-old marijuana convictions was a violation of California law.  168 Cal. App. 4th at 1441.  The law was an effort by the California legislature to guard against the stigma brought on by a drug conviction.  *Id.* at 1449.  In discussing the law, the Court of Appeal also noted that "[o]ther means

involving protective nondisclosure of identity (e.g., identifying a plaintiff by his or her initials or a pseudonym like 'John Doe' or 'Jane Doe') may be used in appropriate circumstances to protect persons convicted of relatively minor marijuana offenses from being further stigmatized." *Id.* at 1452.

The California Supreme Court has also weighed in on the stigma that drug users and addicts face.  In *People v. Thomas*, the Court was deciding on the standard of proof needed to commit a drug addict to involuntary rehabilitation.  19 Cal. 3d 630, 633 (1977).  The Court held that the standard of proof of addiction needed to be beyond a reasonable doubt, reasoning that "[a] person committed as a narcotics addict suffers so severe a curtailment of liberty and *so lingering a moral stigma* that he is entitled to the same standard of proof beyond a reasonable doubt accorded to a criminal defendant." *Id.* at 644 (emphasis added).  In fact, the California Court of appeals has noted that one's status as a drug addict is even more stigmatizing than being a gang member.  *See People v. Englebrecht,* 88 Cal. App. 4th 1236, 1253 (2001) ("While some social stigma might arise from the finding that Englebrecht is a gang member, *it is not the same order of stigma arising from a criminal verdict or a finding that one is ... a narcotics addict.*") (emphasis added).

The Ninth Circuit has permitted parties to proceed anonymously in civil lawsuits and petitions when "anonymity is necessary 'to preserve privacy in a matter of sensitive and highly personal nature.'" *Does I thru XXII v. Advanced Textile Corp.,* 214 F.3d 1058, 1068 (9th Cir. 2000) (internal quotation omitted).  In addition, the Ninth Circuit allows parties to use pseudonyms "when nondisclosure of the party's identity is necessary ... to protect a person from harassment, injury, ridicule, or personal embarrassment." *United States v. Doe* 655 F.2d 920, 922 n. 1 (9th Cir. 1981); *see also Advanced Textile*, 214 F.3d at 1068-1069.

In *Advanced Textile*, the court held that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity."  214 F.3d at 1068.  The court must determine the "precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Id.* The court must finally decide whether the public's interest in the case would be best served by

1  requiring that the litigant reveal his or her identity.  *Id.*  With regard to the last point, the Ninth

2  Circuit has adopted the Fifth Circuit's view that "[p]arty anonymity does not obstruct the public's

3  view of the issues joined or the court's performance in resolving them."  *Id.* at 1068-1069 (quoting

4  *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981).

5        Here, there can be no doubt that Plaintiff C.B. would face intense stigma from the public at

6  large and potential backlash from the kratom industry if his full name was disclosed in the

7  proceedings.  As discussed above, California courts and the California legislature have recognized

8  that drug use and addiction confer a heavy moral stigma onto the user.  Such a stigma can be

9  avoided if Plaintiff were allowed to proceed under his initials.  Further, Plaintiff is at risk of

10  retaliation should he disclose his name.  The kratom industry in the United States is enormous, and

11  Defendant is one of the largest sellers in the country.  Public opposition to proposed DEA

12  regulation to kratom in 2016 was fierce, with over 20,000 comments on the www.regulation.gov

13  website, and this case is highly likely to bring the regulation discussion back into the spotlight.

14  The purpose of this class action is to vindicate consumer rights across the country, but the threat of

15  stigma and industry retaliation may prevent representative plaintiffs from stepping forward on

16  behalf of the public.  Such a result would run counter to the public interest in ensuring that

17  businesses conduct themselves ethically and legally, an interest which far exceeds the limited

18  benefit conferred in knowing a single class action plaintiff's name.  <u>If this motion is denied,</u>

19  <u>Plaintiff requests that the Court terminate this matter and not submit his full name publicly on the</u>

20  <u>record.</u>

21

22  Dated:  February 22, 2023            Respectfully submitted,

23                                      **BURSOR & FISHER, P.A**.

24                                      By: _____

25                                          Neal J. Deckant

26                                      Neal J. Deckant (State Bar No. 322946)

27                                      Luke W. Sironski-White (State Bar No. 348441)
                                    1990 North California Blvd., Suite 940

28                                      Walnut Creek, CA 94596
                                    Telephone: (925) 300-4455

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
lsironski@bursor.com

*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Luke W. Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
          lsironski@bursor.com

*Attorneys for Plaintiff*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**02/22/2023** at 05:41:45 PM
Clerk of the Superior Court
By Katie Winburn,Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| C.B., on behalf of himself and all others similarly situated,<br><br>                   Plaintiff,<br>   v.<br><br>MARTIAN SALES, INC.,<br><br>                 Defendant. | Case No.  37-2023-00007558-CU-FR-CTL<br><br>**DECLARATION OF NEAL J. DECKANT IN SUPPORT OF PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM** |

I, Neal J. Deckant, hereby declare as follows:

1.      I am a Partner at Bursor & Fisher, P.A., and I represent the Plaintiff in the above-captioned matter against Martian Sales, Inc.  I have personal knowledge of the facts set forth in this declaration, and, if called as a witness, could and would competently testify thereto under oath.

2.      I make this Declaration in support of Plaintiff's Motion to Proceed Under Pseudonym.

3.      Plaintiff intends to file a class action complaint against Defendant Martian Sales, Inc., based on its failure to disclose that its product, kratom, is a highly addictive drug that functions in part like an opioid.

4.      From 2020 to late 2022, Plaintiff alleges that he was addicted to Defendant's kratom products.

5.      Plaintiff's addiction was marked an intensely difficult period in his life.  It is not something that he wishes to share with the public.

6.      It is my experience that drug addiction is highly stigmatized, and that Plaintiff might unfairly face stigma if his addiction issues were made public.

7.      However, Plaintiff fervently believe that Defendant should be held accountable for having misled him and the proposed class members in failing to disclose kratom's addictive potential and mechanism of action.

8.      Plaintiff fears that if his full name were to be disclosed in filing this class action complaint that it would draw unwanted and embarrassing public attention to him, and distract from the main purpose of this action, which is to seek relief for the class.

9.      Plaintiff further fears that disclosure of his name and his drug addiction history would negatively impact his current and future career prospects.

10.     Disclosing Plaintiff's full name and identity to the public does nothing to further the public interest in this case, because this case is about Defendant's business practices and kratom's addictive potential.

11.     <u>Specifically, Plaintiff is concerned about a scenario where "Googling" his name would bring up information about this case and immediately identify him as someone who has struggled with addiction issues.</u>

12.     If Plaintiff were not permitted to file the class action complaint, and all other accompanying documents, under his initials, he would be dissuaded from pursuing this action entirely.  <u>If this motion is denied, Plaintiff requests that the Court terminate this action and not file Plaintiff's full name publicly.</u>

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 22nd day of February 2023, at Walnut Creek, California.

_____

Neal J. Deckant

**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Luke W. Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
        lsironski@bursor.com

*Attorneys for Plaintiff*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**02/22/2023** at 05:41:45 PM
Clerk of the Superior Court
By Katie Winburn,Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA

# IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| C.B., on behalf of himself and all others similarly situated,<br><br>                         Plaintiff,<br>    v.<br><br>MARTIAN SALES, INC.,<br><br>                      Defendant. | Case No.  37-2023-00007558-CU-FR-CTL<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYM** |

1
2
3
4
5
6
7

   Pursuant to California Evidence Code sections 452(b) and 453, Plaintiff submits this Request for Judicial Notice in support of his Motion to Proceed Under.  Plaintiff respectfully requests that the Court take judicial notice of the attached Exhibit A, entitled "PROPOSED RULE, Schedules of Controlled Substances: Temporary Placement of Mitragynine and 7-Hydroxymitragynine into Schedule I; Withdrawal, Posted by the Drug Enforcement Administration on Oct 12, 2016," retrieved February 14, 2023 from https://www.regulations.gov/document/DEA-2016-0015-0006.

8
9

Dated:  February 22, 2023     Respectfully submitted,

10
11
12

**BURSOR & FISHER, P.A.**

By: _____
    Neal J. Deckant

13
14
15
16
17

Neal J. Deckant (State Bar No. 322946)
Luke W. Sironski-White (State Bar No. 348441)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
    lsironski@bursor.com

18

*Attorneys for Plaintiff*

19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

An official website of the United States Government. 🇺🇸

Effective January 23, 2023, the new phone number for the Help Desk is 1-866-498-2945 ✕

Docket (DEA-2016-0015) (/docket/DEA-2016-0015) / Document

 **PROPOSED RULE**

# Schedules of Controlled Substances: Temporary Placement of Mitragynine and 7-Hydroxymitragynine into Schedule I; Withdrawal

Posted by the **Drug Enforcement Administration** on Oct 12, 2016



| View More Documents 6 (/docket/DEA-2016-0015/document) |

| View Related Comments 23.22K (/docket/DEA-2016-0015/comments) | | Share ▾ |

**Document Details (/document/DEA-2016-0015-0006)** | **Browse Posted Comments** 23.22K (/document/DEA-2016-0015-0006/comment)

Content

## Action

Withdrawal of Notice of Intent; Solicitation of Comments.

## Summary

On August 31, 2016, the Drug Enforcement Administration (DEA) published in the Federal Register a notice of intent to temporarily place mitragynine and 7-hydroxymitragynine, which are the main psychoactive constituents of the plant Mitragyna speciosa, also referred to as kratom, into schedule I pursuant to the temporary scheduling provisions of the Controlled Substances Act. Since publishing that notice, DEA has received numerous comments from members of the public challenging the scheduling action and requesting that the agency consider those comments and accompanying information before taking further action. In addition, DEA will receive from the Food and Drug Administration (FDA) a scientific and medical evaluation and scheduling recommendation for these substances, which DEA previously requested.

DEA is therefore taking the following actions: DEA is withdrawing the August 31, 2016 notice of intent; and soliciting comments from the public regarding the scheduling of mitragynine and 7-hydroxymitragynine under the Controlled Substances Act.

## Dates

The notice of intent that was published on August 31, 2016 (81 FR 59929) is withdrawn as of October 13, 2016. The comment period will be open until December 1, 2016. All comments for the public record must be submitted electronically or in writing in accordance with the procedures outlined below. Electronic comments must be submitted, and written comments must be postmarked, on or before December 1, 2016. Commenters should be aware that the electronic Federal Docket Management System will not accept comments after 11:59 p.m. Eastern Time on the last day of the comment period. Please note that if you previously submitted a comment via email or regular mail following the August 31, 2016 notice, that comment is being considered by DEA—it is not necessary to resubmit the same comment *unless* you wish to provide additional information, or you wish to have your comment posted for public view in accordance with the instructions provided below.

## Addresses

To ensure proper handling of comments, please reference "Docket No. DEA-442W" on all correspondence, including any attachments.

- *Electronic comments:* The Drug Enforcement Administration encourages that all comments be submitted electronically through the Federal eRulemaking Portal, which provides the ability to type short comments directly into the comment field on the Web page or attach a file for lengthier comments. Please go to *http://www.regulations.gov* and follow the online instructions at that site for submitting comments. Upon completion of your submission, you will receive a Comment Tracking Number for your comment. Please be aware that submitted comments are not instantaneously available for public view on *Regulations.gov*. If you have received a Comment Tracking Number, your comment has been successfully submitted and there is no need to resubmit the same comment.
- *Paper comments:* Paper comments that duplicate the electronic submission are not necessary and are discouraged. Should you wish to mail a paper comment *in lieu of* an electronic comment, it should be sent via regular or express mail to: Drug Enforcement Administration, Attn: DEA Federal Register Representative/ODW, 8701 Morrissette Drive, Springfield, Virginia 22152.

## For Further Information Contact

Michael J. Lewis, Diversion Control Division, Drug Enforcement Administration; Mailing Address: 8701 Morrissette Drive, Springfield, Virginia 22152; Telephone: (202) 598-6812.

## Supplementary Information

### Posting of Public Comments

Please note that all comments received in response to this notice are considered part of the public record. If you previously submitted a comment via email or regular mail following the August 31, 2016 notice, that comment is being considered by DEA—it is not necessary to resubmit the same comment unless you wish to provide additional information, or you wish to have your comment posted for public view in accordance with the instructions provided below.

All comments received in response to this notice of opportunity to comment will, unless reasonable cause is given, be made available by DEA for public inspection online at *http://www.regulations.gov.* Such information includes personal identifying information (such as your name, address, etc.) voluntarily submitted by the commenter. The Freedom of Information Act (FOIA) applies to all comments received. If

you want to submit personal identifying information (such as your name, address, etc.) as part of your comment, but do not want it to be made publicly available, you must include the phrase "PERSONAL IDENTIFYING INFORMATION" in the first paragraph of your comment. You must also place all of the personal identifying information you do not want made publicly available in the first paragraph of your comment and identify what information you want redacted.

If you want to submit confidential business information as part of your comment, but do not want it to be made publicly available, you must include the phrase "CONFIDENTIAL BUSINESS INFORMATION" in the first paragraph of your comment. You must also prominently identify the confidential business information to be redacted within the comment.

Comments containing personal identifying information and confidential business information identified as directed above will generally be made publicly available in redacted form. If a comment has so much personal identifying information or confidential business information that it cannot be effectively redacted, all or part of that comment may not be made publicly available. Comments posted to *http://www.regulations.gov* may include any personal identifying information (such as name, address, and phone number) or confidential business information included in the text of your electronic submission that is not identified as directed above as personal or confidential.

## Background

### Withdrawal of Notice of Intent

The Controlled Substances Act (CSA) contains a temporary scheduling provision, 21 U.S.C. 811(h), pursuant to which the DEA Administrator [1] may temporarily place a substance in schedule I where he finds that doing so is necessary to avoid an imminent hazard to the public safety. This provision of the CSA requires DEA to publish a notice in the Federal Register of its intent to issue a temporary scheduling order at least 30 days before issuing any such order. DEA published such a notice of intent on August 31, 2016, with respect to mitragynine and 7-hydroxymitragynine, which are the main psychoactive constituents of the plant commonly known as kratom. 81 FR 59929.

In response to the notice of intent, DEA received numerous comments from the public on mitragynine and 7-hydroxymitragynine, including comments offering their opinions regarding the pharmacological effects of these substances. To allow consideration of these comments, as well as others received on or before December 1, 2016, DEA has decided to withdraw the August 31, 2016 notice of intent published at 81 FR 59929. DEA has also requested that the FDA expedite its scientific and medical evaluation and scheduling recommendation for these substances, which DEA previously requested in accordance with 21 U.S.C. 811(b). [2]

Accordingly, the August 31, 2016, notice of intent to temporarily place mitragynine and 7-hydroxymitragynine in schedule I is withdrawn. Mitragynine and 7-hydroxymitragynine therefore remain—as has been the case—noncontrolled substances under federal law. [3]

## Consideration of Public Comments and FDA's Analysis

With respect to mitragynine and 7-hydroxymitragynine, DEA will consider all public comments received under the above procedures, as well as FDA's scientific and medical evaluation and scheduling recommendation for these substances. Once DEA has received and considered all of this information, DEA will decide whether to proceed with permanent scheduling of mitragynine and 7-hydroxymitragynine, or both permanent and temporary scheduling of these substances.

*Permanent Scheduling Process:* As the CSA provides, if DEA determines that the medical and scientific facts contained in the FDA scheduling evaluation, along with all other relevant data and information, constitute substantial evidence of potential for abuse to support permanent scheduling of mitragynine and 7-hydroxymitragynine, DEA will publish in the Federal Register a notice of proposed rulemaking, which will give interested members of the public an additional opportunity to submit comments and request a hearing. [4] As provided in 21 U.S.C. 811(a), permanent scheduling rules shall be made on the record after opportunity for a hearing pursuant to the rulemaking procedures prescribed by 5 U.S.C. 553, 556, and 557.

*Temporary Scheduling Process:* The pendency of permanent scheduling proceedings for a substance does not preclude a simultaneous or subsequent order to temporarily control that substance. If DEA finds in light of FDA's scientific and medical evaluation and after consideration of all public comments and other relevant information that, based on the criteria of section 811(h), temporary placement of mitragynine and 7-hydroxymitragynine in schedule I is necessary to avoid an imminent hazard to the public safety, DEA will follow the statutory procedures for issuing such a temporary scheduling order. As indicated above, before issuing such a temporary scheduling order, DEA would be required to publish in the Federal Register a new notice of intent.

Dated: October 6, 2016.
Chuck Rosenberg,
Acting Administrator.
[FR Doc. 2016-24659 Filed 10-12-16; 8:45 am]
BILLING CODE 4410-09-P

# Footnotes

[1] The Attorney General has delegated her functions under the CSA to the DEA Administrator.

[2] Section 811(b) provides that the scientific and medical evaluation and scheduling recommendation shall be conducted by the Secretary of Health and Human Services (HHS). This function has been delegated to the Assistant Secretary for Health. 58 FR 35460 (1993). Within HHS, the FDA has primary responsibility for conducting the evaluation and making the recommendation.

[3] Under some state and local laws, kratom and/or its constituents mitragynine and 7-hydroxymitragynine are currently listed as controlled substances or otherwise subject to control. Nothing in this publication alters the validity of such laws, or any pending state efforts to implement those laws or enact new laws controlling these substances.

[4] In permanent scheduling actions, when DEA reviews the FDA evaluation and scheduling recommendation, the FDA determinations as to scientific and medical matters are binding on DEA. 21 U.S.C. 811(b).



Download File

⬇ Download ▾

**Document ID**
DEA-2016-0015-0006

 **Comments Received**

23,236

**More Details** ▾

---

### Document Details

**Comment Due Date**

Dec 1, 2016

**Federal Register Number**

2016-24659

**CFR**

21 CFR Part 1308

**Received Date**

Oct 12, 2016

**More Details** ▾



Your Voice in Federal Decision Making

| About | Bulk Data Download | Agencies | Learn |
|---|---|---|---|
| (/about) | (/bulkdownload) | (/agencies) | (/learn) |

Reports    FAQ

(https://resources.regulations.gov/public/component/main?main=Reports)    (/faq)

Privacy & Security Notice (/privacy-notice)    |    User Notice (/user-notice)    |
Accessibility Statement (/accessibility)    |    Developers (https://open.gsa.gov/api/regulationsgov/)    |
FOIA (https://www.gsa.gov/reference/freedom-of-information-act-foia)

Support (/support)    Provide Site Feedback

1
2
3
4
5

**ELECTRONICALLY RECEIVED**
Superior Court of California,
County of San Diego

**02/22/2023** at 05:41:45 PM

Clerk of the Superior Court
By Katie Winburn,Deputy Clerk

6
7

# SUPERIOR COURT OF CALIFORNIA
# IN AND FOR THE COUNTY OF SAN DIEGO

8
9

10   C.B., on behalf of himself and all others
     similarly situated,

11                                    Plaintiff,

12         v.

13    MARTIAN SALES, INC.,

14                                    Defendant.

15

16

Case No.  37-2023-00007558-CU-FR-CTL

**[PROPOSED] ORDER TO PROCEED
UNDER PSEUDONYM**

17

18         Having heard and considered Plaintiff's Motion to Proceed Under Pseudonym and to Seal

19   or Redact Identifying Documents per Local Rule 2.1.2(F) and California Rule of Court 2.550 and

20   2.551, the Court finds good cause in support thereof.

21         Accordingly, IT IS HEREBY ORDERED that Plaintiff may proceed in the action under his

22   initials for documents filed publicly.  Any document bearing Plaintiff's real name shall be

23   submitted under seal and not filed publicly.

24

25         IT IS SO ORDERED.

26

27   Dated: _____, 2023                    _____

28                                                    Judge of the San Diego Superior Court

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**02/22/2023** at 05:41:45 PM
Clerk of the Superior Court
By Katie Winburn,Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MARTIAN SALES, INC.,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
C.B., on behalf of himself and all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California,

County of San Diego, 330 West Broadway, San Diego, CA 92101

**CASE NUMBER:**
*(Número del Caso):* 37-2023-00007558-CU-FR-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Neal J. Deckant, Bursor & Fisher, P.A., 1990 N. California Blvd., Suite 940, Walnut Creek, CA 94596. Tel.: (925) 300-4455

DATE: 02/23/2023                    Clerk, by _K. Winburn_ , Deputy
*(Fecha)*                           *(Secretario)*   K. Winburn   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]
Superior Court of California
County of San Diego

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Martian Sales, Inc.

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form    Save this form    Clear this form

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| DIVISION: | Central |
| TELEPHONE NUMBER: | (619) 450-7073 |

| PLAINTIFF(S) / PETITIONER(S): | CB |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Martian Sales INC |
|---|---|

CB VS MARTIAN SALES INC [IMAGED]

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: |
|---|---|
| | 37-2023-00007558-CU-FR-CTL |

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge: Joel R. Wohlfeil                                      Department: C-73

## COMPLAINT/PETITION FILED: 02/22/2023

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 07/28/2023 | 02:00 pm | C-73 | Joel R. Wohlfeil |

**Due to the COVID-19 pandemic, all Case Management Conferences (CMCs) are being conducted virtually unless there is a court order stating otherwise.** Prior to the hearing date, visit the "virtual hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC. (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

**TIME FOR SERVICE AND RESPONSE:** The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint. An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint. A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed. If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6). If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

**JURY FEES:** In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

**COURT REPORTERS:** Official Court Reporters are not normally available in civil matters, but may be requested in certain situations no later than 10 days before the hearing date. See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for information.

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged. The court encourages and expects the parties to consider using ADR options prior to the CMC. The use of ADR will be discussed at the CMC. Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

## NOTICE OF E-FILING REQUIREMENTS
## AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases.  Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing.  E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court.  All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program."  This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain.  The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed.  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

F I L E D

Clerk of the Superior Court

MAR - 7 2023

**ELECTRONICALLY RECEIVED**
Superior Court of California,
County of San Diego

**02/22/2023** at 05:41:45 PM

Clerk of the Superior Court
By Katie Winburn, Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA
# IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| C.B., on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>MARTIAN SALES, INC.,<br><br>                              Defendant. | Case No.  37-2023-00007558-CU-FR-CTL<br><br>[~~PROPOSED~~] ORDER TO PROCEED UNDER PSEUDONYM |

        Having heard and considered Plaintiff's Motion to Proceed Under Pseudonym and to Seal

or Redact Identifying Documents per Local Rule 2.1.2(F) and California Rule of Court 2.550 and

2.551, the Court finds good cause in support thereof.

        Accordingly, IT IS HEREBY ORDERED that Plaintiff may proceed in the action under his

initials for documents filed publicly.  Any document bearing Plaintiff's real name shall be

submitted under seal and not filed publicly. *and Request that this order be modified or varied.*

*and This order is without prejudice to Defendant's objection*

IT IS SO ORDERED.

Dated:  ___3-7___, 2023                                   _____

                                                   Judge of the San Diego Superior Court

                                                   **Judge Joel R. Wohlfeil**

| Attorney or Party without Attorney:<br>NEAL J. DECKANT (SBN 322946)<br>Bursor & Fisher, P.A.<br>1990 N California Blvd Suite 940<br>Walnut Creek, CA 94596<br>  *Telephone No:*  925-300-4455 | | | | | *For Court Use Only*<br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**03/30/2023** at 05:09:00 PM<br>Clerk of the Superior Court<br>By E- Filing, Deputy Clerk |
|---|---|---|---|---|---|
|  *Attorney For:*  Plaintiff | | *Ref. No. or File No.:*<br>1669 OPMS Kratom CA | | | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>SUPERIOR COURT FOR THE STATE OF CALIFORNIA COUNTY OF SAN DIEGO | | | | | |
| *Plaintiff:*  C.B., on behalf of himself and all others similarly situated<br>*Defendant:*  MARTIAN SALES, INC. | | | | | |
| **PROOF OF SERVICE**<br>**SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | *Case Number:*<br>37-2023-00007558-CU-FR-CTL | |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUMMONS; CIVIL CASE COVER SHEET; CLASS ACTION COMPLAINT; NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL); ADR INFORMATION; STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)

3. *a.  Party served:*     MARTIAN SALES, INC.
   *b.  Person served:*   Rose Garcia, Employee, Wyoming Registered Agent, Registered Agent for Service of Process.

4. *Address where the party was served:*   1621 CENTRAL AVENUE, CHEYENNE, WY 82001

5. *I served the party:*
   **a. by personal service.**   I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):* Thu, Mar 16 2023 (2) at *(time):* 02:12 PM
   (1)  **X**   (business)
   (2)  ☐   (home)
   (3)  ☐   (other) :

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a.  ☐   as an individual defendant.
   b.  ☐   as the person sued under the fictitious name of *(specify):*
   c.  ☐   as occupant.
   d.  **X**   On behalf of *(specify):*   MARTIAN SALES, INC.
   under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | **X**  416.10 (corporation) | ☐  415.95 (business organization, form unknown) |
   | ☐  416.20 (defunct corporation) | ☐  416.60 (minor) |
   | ☐  416.30 (joint stock company/association) | ☐  416.70 (ward or conservatee) |
   | ☐  416.40 (association or partnership) | ☐  416.90 (authorized person) |
   | ☐  416.50 (public entity) | ☐  415.46 (occupant) |
   | ☐  other: | |



| | | |
|---|---|---|
| Judicial Council Form POS-010<br>Rule 2.150.(a)&(b) Rev January 1, 2007 | **PROOF OF**<br>**SERVICE**<br>**SUMMONS** | *8552109*<br>*(7973519)*<br>Page 1 of 2 |

| Attorney or Party without Attorney:<br>NEAL J. DECKANT (SBN 322946)<br>Bursor & Fisher, P.A.<br>1990 N California Blvd Suite 940<br>Walnut Creek, CA 94596<br>*Telephone No:* 925-300-4455 | | | | | **For Court Use Only** |
|---|---|---|---|---|---|
| *Attorney For:* Plaintiff | | *Ref. No. or File No.:*<br>1669 OPMS Kratom CA | | | |
| *Insert name of Court, and Judicial District and Branch Court:*<br>SUPERIOR COURT FOR THE STATE OF CALIFORNIA COUNTY OF SAN DIEGO | | | | | |
| *Plaintiff:* C.B., on behalf of himself and all otherssimilarly situated<br>*Defendant:* MARTIAN SALES, INC. | | | | | |
| **PROOF OF SERVICE**<br>**SUMMONS** | *Hearing Date:* | *Time:* | *Dept/Div:* | | *Case Number:*<br>37-2023-00007558-CU-FR-CTL |

Recoverable cost Per CCP 1033.5(a)(4)(B)

7. **Person who served papers**
   a. Name:      Danielle Broderick
   b. Address:      **FIRST LEGAL**
            200 WEBSTER STREET, SUITE 201
            OAKLAND, CA 94607
   c. Telephone number:    (415) 626-3111
   d. **The fee for service was:** 244.83
   e. I am:
       (1)  [ X ]   not a registered California process server.
       (2)  [   ]   exempt from registration under Business and Professions Code section 22350(b).
       (3)  [   ]   a registered California process server:
           (i)    [ ] owner   [ ] employee   [ ] independent contractor
           (ii)   Registration No:
           (iii)   County:

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

03/17/2023
*(D     ate)*

Danielle Broderick



Judicial Council Form POS-010
Rule 2.150.(a)&(b) Rev January 1, 2007

**PROOF OF**
**SERVICE**
**SUMMONS**

*8552109*
*(7973519)*
Page 2 of 2

Squire Patton Boggs (US) LLP
Adam R. Fox (State Bar # 220584)
adam.fox@squirepb.com
Hannah J. Makinde (State Bar # 307907)
hannah.makinde@squirepb.com
Erin M. Gilmore (State Bar # 324319)
erin.gilmore@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone:      +1 213 624 2500
Facsimile:      +1 213 623 4581

Attorneys for Defendant
MARTIAN SALES, INC.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| C.B., on behalf of himself and all others similarly situated, | Case No. 37-2023-00007558-CU-FR-CTL |
| Plaintiff, | **DEFENDANT MARTIAN SALES, INC.'S ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT** |
| v. | |
| MARTIAN SALES, INC. , | **JURY TRIAL DEMANDED** |
| Defendant. | |

Defendant Martian Sales, Inc., ("Martian Sales") answers the Class Action Complaint ("Complaint") of Plaintiff C.B. ("Plaintiff") as follows:

## **GENERAL DENIAL**

Pursuant to Code of Civil Procedure section 431.30(d), Martin Sales denies generally and specifically, each and every allegation and purported cause of action alleged in the Complaint. Martian Sales further denies that Plaintiff has suffered any damages because of any act or omission on the part of Martian Sales.

- 1 -

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**DEFENSES**

**FIRST DEFENSE**

**(Failure to State a Claim)**

1.      The Complaint fails to state facts sufficient to constitute a cause of action upon which relief may be granted against Martian Sales.

**SECOND DEFENSE**

**(Statute of Limitations / Repose)**

2.      The Complaint, and each alleged cause of action contained therein, is barred by the applicable statute of limitations and of repose.

**THIRD DEFENSE**

**(Lack of Standing)**

3.      Plaintiff's and the putative class members' claims are barred, in whole or in part, because Plaintiff and the putative class members lack standing to assert claims in this action.

**FOURTH DEFENSE**

**(Laches)**

4.      Plaintiff's and the putative class members' claims are barred, in whole or in part, by the doctrine of laches.

**FIFTH DEFENSE**

**(Unclean Hands)**

5.      Plaintiff's and the putative class members' claims are barred, in whole or in part, by the doctrine of unclean hands.

**SIXTH DEFENSE**

**(Estoppel)**

6.      Plaintiff's and the putative class members' claims are barred, in whole or in part, by estoppel.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

ANSWER TO COMPLAINT
CASE NO. 37-2023-00007558

**SEVENTH DEFENSE**

**(Waiver)**

7.     Plaintiff's and the putative class members' claims are barred, in whole or in part, by waiver.

**EIGHTH DEFENSE**

**(Remedy at Law)**

8.     To the extent Plaintiff and the putative class members attempt to seek equitable relief, Plaintiff and the putative class members are not entitled to such relief because they have an adequate remedy at law and cannot otherwise satisfy the elements for equitable relief.

**NINTH DEFENSE**

**(Third Person Conduct)**

9.     Plaintiff's and the putative class members' claims are the result of the acts, omissions, and conduct of third parties or independent, intervening or superseding causes, which are not the responsibility of Martian Sales.

**TENTH DEFENSE**

**(Apportionment of Fault)**

10.     Martian Sales is not legally responsible for the damages claimed by Plaintiff and the putative class members in the Complaint; however, if Martian Sales is found legally responsible, then such legal responsibility is not the sole and proximate cause of the injuries alleged by Plaintiff and the putative class members, and the damages awarded to Plaintiff and the putative class members, if any, are to be apportioned in accordance with the fault and legal responsibility of all parties, persons, entities, or the agents, servants and employees of such parties, persons, and entities who contributed to and/or caused said damages.

**ELEVENTH DEFENSE**

**(Speculative Damages)**

11.     The damages requested in the Complaint are speculative, uncertain or otherwise not cognizable.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 3 -

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

**TWELFTH DEFENSE**

**(Failure to Mitigate Damages)**

12.     Plaintiff's and the putative class members' claims are barred, in whole or in party, by Plaintiff's and the putative class members' failure to make reasonable efforts to mitigate their damages.

**THIRTEENTH DEFENSE**

**(Comparative Negligence of Plaintiff / Putative Class Members)**

13.     To the extent Plaintiff's and the putative class members' injuries and damages were caused in whole or in part by their own negligence, then their recovery must be reduced accordingly.

**FOURTEENTH DEFENSE**

**(Comparative Fault of Third Parties)**

14.     To the extent that people or entities other than Martian Sales caused or contributed to the damages Plaintiff and the putative class members claim to have suffered, then any award made in favor of Plaintiff and the putative class members must be reduced by an amount equal to the percentage of the fault of others in causing or contributing to the damages as alleged in the Complaint.

**FIFTEENTH DEFENSE**

**(Offset)**

15.     To the extent Plaintiff and the putative class members receive, or in the future receive, benefits for the claimed injuries that give rise to the causes of action alleged in the Complaint, or some of them, any judgment rendered in favor of Plaintiff and the putative class members on those claims must be reduced or off-set by the amount of the benefits paid to or on behalf of Plaintiff and the putative class members.

**SIXTEENTH DEFENSE**

**(Collateral Source)**

16.     Any verdict or judgment that might be recovered by Plaintiff and the putative class members must be reduced by those amounts that have already or will in the future indemnify

- 4 -

Plaintiff and the putative class members in whole or in part for any past or future claimed economic loss from any collateral source, such as insurance, social security, workers' compensation, taxes, or employee benefit program.

**SEVENTEENTH DEFENSE**

**(State Law Defenses)**

17.     Martian Sales is entitled to, and claims the benefit of, all defenses and presumptions set forth in or arising from any rule of law or statute of this State or any other state whose substantive law might control the action.

**EIGHTEENTH DEFENSE**

**(Preemption)**

18.     Plaintiff's and the putative class members' claims violate the Supremacy Clause of the United States Constitution.

**NINETEENTH DEFENSE**

**(Failure to Plead an Actionable Misrepresentation Claim)**

19.     Plaintiff and the putative class members fail to plead any actionable misrepresentation or omission made by or attributable to Martian Sales.

**TWENTIETH DEFENSE**

**(No Duty)**

20.     Plaintiff and the putative class members do not and cannot identify any legally cognizable duty owed to Plaintiff or the putative class members by Martian Sales.

**TWENTY-FIRST DEFENSE**

**(Alteration, Misuse and Abuse)**

21.     Plaintiff's and the putative class members' claims are barred, in whole or in part, by any alteration or modification of the products at issue, or any illicit or improper use, misuse, or abuse of the products at issue, whether by the user or by any other third party.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 5 -

**TWENTY-SECOND DEFENSE**

**(Failure to Exhaust Administrative Remedies)**

22.   Plaintiff's and the putative class members' claims are barred, in whole or in part, by Plaintiff's and the putative class members' failure to exhaust the administrative remedies available to them before filing this lawsuit.

**TWENTY-THIRD DEFENSE**

**(Plaintiff's/Putative Class Members' Negligence or Wrongful Conduct)**

23.   Plaintiff's and the putative class members' claims are barred, in whole or in part, by Plaintiff's and the putative class members' negligence or other wrongful conduct, and such negligence or other wrongful conduct on the part of Plaintiff or the putative class members constitutes a bar to any recovery by Plaintiff and the putative class members or, in the alternative, recovery, if any, obtained by Plaintiff  and the putative class members should be reduced and/or barred in proportion to the extent such negligence or other wrongful conduct was a cause of Plaintiff's and the putative class members' damages.

**TWENTY-FOURTH DEFENSE**

**(Warranty Claims)**

24.   Martian Sales did not make to Plaintiff or the putative class members, nor did it breach, any express or implied warranties and/or breach any warranties created by law.  Plaintiff's and the putative class members' warranty claims are barred by applicable law, and for lack of privity with Martian Sales, and/or failure of Plaintiff and the putative class members (or Plaintiff's or the putative class members' representatives) to give timely notice to Martian Sales of any alleged breach of warranty.  Martian Sales further specifically pleads as to any breach of warranty claim all defenses under the Uniform Commercial Code existing and which may arise in the future.

**TWENTY-FIFTH DEFENSE**

**(Assumption of Risk)**

25.   Plaintiff and the putative class members fully knew of and appreciated any risk of danger of injury, loss, damage, or detriment regarding the events and matters alleged in the Complaint and having full knowledge and appreciation of such risk and dangers, voluntarily

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 6 -

themself to and assumed all risk and dangers of injury, loss, damage, or detriment from the events and matters alleged in the Complaint.

**TWENTY-SIXTH DEFENSE**

**(Preexisting Conditions)**

26.     Plaintiff's and the putative class members' injuries and damages, if any, were due to preexisting conditions, idiosyncratic reactions, or other responses to the products at issue on the part of the users, or by other unrelated, pre-existing, or subsequent conditions unrelated to the conduct of Martian Sales.

**TWENTY-SEVENTH DEFENSE**

**(Insufficient Particularity)**

27.     To the extent that Plaintiff and the putative class members' are alleging fraud, fraudulent concealment, or similar conduct, Plaintiff and the putative class members have failed to plead fraud with sufficient particularity.

**TWENTY-EIGHTH DEFENSE**

**(Lack of Ascertainability)**

28.     Plaintiffs' Class Action Complaint fails to state facts sufficient to certify a class action pursuant to applicable state or federal rules of civil procedure because, among other things, the putative class is inadequately defined and lacks acertainability, Defendant has not acted or failed to act on grounds that apply generally to the putative class, the monetary relief requested is not incidental to the injunctive relief sought, the putative class is not so numerous that joinder is impracticable, the claims lack commonality and typicality, the named Plaintiff and his counsel cannot adequately protect the interests of the class, common questions of law and/or fact do not predominate, and a class action is not the superior method for adjudicating this dispute.

**TWENTY-NINTH DEFENSE**

**(Unjust Enrichment)**

29.     To the extent Plaintiff and the putative class members are seeking to recover more than the amount by which they were allegedly harmed, and therefore more than the amount to

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 7 -

1  which they are entitled, if any, an award of the amount requested in the Complaint would unjustly

2  enrich Plaintiff and the putative class members.

**THIRTIETH DEFENSE**

**(Superseding, Intervening, and Proximate Cause)**

5  30.   Plaintiff's and the putative class members' alleged damages, if any, were the result

6  of, and were caused solely and proximately by, the act, fault, conduct, or negligence of persons or

7  entities other than Martian Sales; such negligence, fault, act, or conduct was of a character as not

8  reasonably to be expected to happen in the natural sequence of events; and such negligence, fault,

9  act or conduct was the independent, intervening, and superseding cause, and therefore, the sole

10  proximate cause of any such damages, thus relieving Martian Sales of any liability.

**THIRTY-FIRST DEFENSE**

**(Remote Cause)**

13  31.   The injuries Plaintiff and the putative class members allege are too remote from the

14  alleged conduct of Martian Sales to be a basis for liability as a matter of law and to satisfy

15  principles of due process and proximate causation.

**THIRTY-SECOND DEFENSE**

**(No Duty to Plaintiff)**

18  32.   Martian Sales owed no duty to the Plaintiff or the putative class members

19  regarding the use, consumption or control of the subject substance.

**THIRTY-THIRD DEFENSE**

**(Compliance with Law)**

22  33.   At all times, Martian Sales followed and conformed its conduct and actions to

23  the law of the state of California in all respects.

**THIRTY-FOURTH DEFENSE**

**(Compliance with Law)**

26  34.   Plaintiffs' and the putative class members' claims are barred, in whole or in part,

27  by the deference that federal and state constitutional law and federal and state common law give

28

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 8 -

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

to discretionary actions by the FDA under the Federal Food, Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq*., and regulations promulgated thereunder.

**THIRTY-FIFTH DEFENSE**

**(Voluntary Payment)**

35.     Plaintiff's and the putative class members claims are barred, in whole or in part, by the voluntary payment doctrine.

**THIRTY-SIXTH DEFENSE**

**(First Amendment)**

36.     Plaintiff's and the putative class members' claims are barred to the extent they are related to Martian Sales' advertising, public statements, lobbying, or other activities protected by the First Amendment to the Constitution of the United States or by the Constitution of the State of California or that of any other state whose laws may apply.

**THIRTY-SEVENTH DEFENSE**

**(Punitive Damages – Violation of Constitutional Rights)**

37.     Plaintiff's and the putative class members' claims for punitive or exemplary damages or other civil penalties are barred or reduced by applicable law or statute or, in the alternative, are unconstitutional insofar as they violate the due process protections afforded by the United States Constitution, the excessive fines clause of the Eighth Amendment of the United States Constitution, the Full Faith and Credit Clause of the United States Constitution, the constitutional prohibitions against bills of attainder or application of ex post facto quasi-criminal punishment in violation of the Ex Post Facto Clause of the United States Constitution, and any other applicable provisions of the Constitution of this State or that of any other state whose laws may apply. Any law, statute or other authority purporting to permit the recovery of punitive damages or civil penalties in this case is unconstitutional, facially and as applied, to the extent that, without limitation, it: (1) lacks constitutionally sufficient standards to guide and restrain the jury's discretion in determining whether to award punitive damages or civil penalties and/or the amount, if any; (2) is void for vagueness in that it fails to provide adequate advance notice as to what conduct will result in punitive damages or civil penalties; (3) unconstitutionally may permit

- 9 -

recovery of punitive damages or civil penalties based on harms to third parties, out-of-state conduct, conduct that complied with applicable law, or conduct that was not directed, or did not proximately cause harm, to Plaintiff; (4) unconstitutionally may permit recovery of punitive damages or civil penalties in an amount that is not both reasonable and proportionate to the amount of harm, if any, to Plaintiff and to the amount of compensatory damages, if any; (5) unconstitutionally may permit jury consideration of net worth or other financial information relating to Martian Sales; (6) lacks constitutionally sufficient standards to be applied by the trial court in post-verdict review of any award of punitive damages or civil penalties; (7) lacks constitutionally sufficient standards for appellate review of any award of punitive damages or civil penalties; (8) would unconstitutionally impose a penalty, criminal in nature, without according to Martian Sales the same procedural protections that are accorded to criminal defendants under the constitutions of the United States, this State, and any other state whose laws may apply; and (9) otherwise fails to satisfy Supreme Court precedent, including, without limitation, *Pacific Mutual Life Insurance. Co. v. Haslip*, 499 U.S. 1 (1991); *TXO Production Corp. v. Alliance Res., Inc.*, 509 U.S. 443 (1993); *BMW of North America v. Gore*, 517 U.S. 559 (1996); *State Farm Insurance Co. v. Campbell*, 538 U.S. 408 (2003); *and Philip Morris USA v. Williams*, 549 U.S. 346 (2007).

### THIRTY -EIGHTH DEFENSE

### (No Attorney Fees)

38.    As a matter of law, Plaintiff and the putative class members are not entitled to attorney's fees for these alleged claims.

### THIRTY -NINTH DEFENSE

### (Reservation of Defenses)

39.    Martian Sales reserves the right to assert additional defenses as its investigation in this matter continues and hereby gives notice that it intends to rely upon any other defenses that may become available or apparent during the discovery proceedings in this matter or that are asserted by any other defendant which may be made a party to this action, and hereby reserves its right to amend its Answer and to assert any such defenses.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

WHEREFORE, Martian Sales prays for judgment and relief as follows:

1.      That Plaintiff and the putative class members take nothing by way of the Complaint on file herein;

2.      That class certification be denied;

3.      For judgment in favor of Martian Sales and against Plaintiff and the putative class members on each and every cause of action of the Complaint;

4.      For Martian Sales' costs of suit as allowed by law; and,

5.      For such other relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Martian Sales hereby demands a trial by jury of all issues so triable.

Dated: April 7, 2023

Respectfully Submitted,

Squire Patton Boggs (US) LLP

By: _____
            Adam R. Fox
            Hannah J. Makinde
            Erin M. Gilmore

Attorneys for Defendant
MARTIAN SALES, INC.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 11 -

*C.B. v. Martian Sales, Inc.*
San Diego Superior Court, Case No. 37-2023-00007558-CU-FR-CTL

**PROOF OF SERVICE**
(Pursuant to California State Law)

The undersigned certifies and declares as follows:

I am a resident of the State of California and over 18 years of age and am not a party to this action. My business address is 555 South Flower Street, Suite 3100, Los Angeles, CA 90071, which is located in the county where any non-personal service described below took place.

On April 7, 2023, a copy of the following document(s):

**DEFENDANT MARTIAN SALES, INC.'S ANSWER TO PLAINTIFF'S CLASS ACTION COMPLAINT**

was served on:

**BURSOR & FISHER, P.A**.                    *Attorneys for Plaintiff*
Neal J. Deckant                              **C.B.**
Luke W. Sironski
1990 North California Boulevard
Suite 940
Walnut Creek, CA  94596
Tel: (925) 300-4455
Fax: (925) 407-2700
Email:  ndeckant@bursor.com
        lsironski@bursor.com

Service was accomplished as follows.

☒       **By U.S. Mail, According to Normal Business Practices.**  On the above date, at my place of business at the above address, I sealed the above document(s) in an envelope addressed to the above, and I placed that sealed envelope for collection and mailing following ordinary business practices, for deposit with the U.S. Postal Service. I am readily familiar with the business practice at my place of business for the collection and processing of correspondence for mailing with the U.S. Postal Service. Correspondence so collected and processed is deposited the U.S. Postal Service the same day in the ordinary course of business, postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on April 7, 2023, at Los Angeles, California.

_____
Martha Kalenderian
127008.00004

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

- 1 -
Proof of Service